No. 98-038

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 144

IN THE MATTER OF THE PATERNITY OF M.J.S.,
CHARLES BRODZKI,

Petitioner and Appellant,

v.

DEPARTMENT OF PUBLIC HEALTH AND
HUMAN SERVICES, and ANNA M. SMITH,

Defendants and Respondents.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles Brodzki, Pro Se, Bozeman, Montana

For Respondents:

Lonnie J. Olson, Special Assistant Attorney General,
Department of Public Health and Human Services, Child Support
Enforcement Division, Helena, Montana

Submitted on Briefs: April 30, 1998
Decided: June 9, 1998
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Charles Brodzki (Charles), appearing pro se, appeals from the decision of the Eighteenth Judicial District Court, Gallatin County, affirming the decision of the Administrative Law Judge (ALJ) holding that Montana Child Support Enforcement Division (CSED) had jurisdiction to commence paternity proceedings, denying Charles' requests for discovery and ordering Charles to submit to blood testing. Affirmed.

Background

¶2    Charles and Anna M. Smith (Anna) co-habitated in Florida in 1994 and 1995.  CSED alleges that their live-in relationship lasted from August 1994 until sometime at the end of February 1995, at which time Anna moved out. Both Charles and Anna testified that they engaged in sexual relations during the time that they lived together.  The ALJ found that the probable period of conception of M.J.S. was between February 13, 1995 and March 26, 1995. Anna testified that she had sex with Charles during that time.  Charles testified, however, that the parties stopped having sexual relations around January 28, 1995.

¶3    This case commenced on March 29, 1996, when CSED received an interstate transmittal, including a paternity affidavit of Anna, from the State of Rhode Island.  The transmittal named Charles as the alleged father of M.J.S., a minor child.  On May 14, 1996, CSED issued a Notice of Parental Responsibility to Charles containing the Rhode Island transmittal and a second, Montana affidavit of paternity.  Thereafter, Charles denied paternity and requested an administrative hearing.

¶4    At a pre-hearing conference, Charles requested discovery of his own automobile insurance records concerning a claim Anna had filed with his insurance company in Florida.   Charles also requested Anna's medical records from Rhode Island. The ALJ explained that she did not have jurisdiction outside Montana, but that Charles could request subpoenas and serve them on his insurer and Anna.  Charles did not serve subpoenas in accordance with the rules of procedure.  Thereafter, Charles filed a motion to reconsider his discovery requests.  The ALJ denied the motion, determining that the information sought was not relevant to the limited issue which she has jurisdiction to determine--whether there is a reasonable probability that Charles engaged sexual intercourse with Anna during the probable period of conception.

¶5    The administrative hearing was held on December 10th and 16th.  At the hearing, the ALJ, on her own motion, excluded the Montana paternity affidavit of Anna.  The ALJ, however,  allowed CSED to proceed with the paternity action based on Anna's testimony at the hearing and the interstate transmittal which contained the Rhode Island affidavit of paternity.  On December 13th, Charles moved to dismiss based on lack of subject matter

jurisdiction for failure of CSED to have a paternity affidavit in compliance with § 40-5-232, MCA. The ALJ denied the motion on December 16th. On March 19, 1997, the ALJ issued a Paternity Blood Test Decision and Order finding that there was a reasonable probability that Charles engaged in sexual intercourse with Anna during the probable period of conception and allowing CSED to issue a subpoena ordering Charles to submit to paternity blood testing.

¶6    Charles moved to stay enforcement of the Paternity Blood Testing. The ALJ did not rule on Charles' motion. However, on April 17, 1997 Charles filed his Petition for Judicial Review of the ALJ's Paternity Blood Testing Order to the District Court. At the District Court, Charles argued that he was denied discovery and that CSED lacked subject matter jurisdiction to proceed with the paternity action. Following briefing and oral argument, the District Court affirmed the ALJ's decision. It is from the District Court's order that Charles appeals. Charles presents two issues on appeal:

¶7    1) Did the ALJ abuse her discretion in denying Charles' discovery requests?

¶8    2) Did CSED have subject matter jurisdiction pursuant to § 40-5-232, MCA?

Discussion

I

¶9    1) Did the ALJ abuse her discretion in denying Charles' discovery requests?

¶10   An administrative hearing to establish paternity is a contested case and is subject to the provisions of the Montana Administrative Procedure Act of Title 2, Chapter 4, MCA. The agency's rules of practice provide for discovery, but require that the parties have approval from the ALJ before conducting discovery. The parties must inform the ALJ at the prehearing conference of the proposed type of discovery and information which they seek to discover. At the prehearing conference, Charles requested his insurance records and Anna's medical records. The ALJ explained that she did not have jurisdiction to obtain the out-of-state records, but that Charles could request them via subpoenas. A long discussion ensued between the ALJ and Charles regarding the relevancy of Charles' discovery requests. The ALJ explained that she has limited jurisdiction to decide the issue of whether the parties engaged in sexual intercourse during the probable period of conception and that any evidence presented must be relevant to that issue. Although some confusion resulted from the discussion of subpoenas, the record reveals that Charles did not serve subpoenas on his insurance company and Anna in compliance with the rules. Furthermore, when Charles moved the ALJ to reconsider his discovery requests, the ALJ determined that the records were not relevant and denied his motion.

¶11   Charles argues that the administrative rules require that discovery be

made available to the parties and that the rules should be construed liberally to allow such discovery. Charles further argues that he established the relevancy of his insurance records in his motion for reconsideration.

¶12 CSED argues that the entire purpose of the administrative hearing is for the ALJ to determine whether there is a reasonable probability that the alleged father engaged in sexual intercourse with the mother during the probable time of conception and that if the ALJ determines there is such a "reasonable probability" she may allow the agency to issue a subpoena requiring the alleged father to take a blood test. CSED further argues that the information sought by Charles is outside the scope of the hearing.

¶13 Section 40-5-233(b), MCA, provides that "[i]f the department determines after a review of a sworn statement that there are sufficient facts to establish a reasonable probability of paternity or nonpaternity as claimed by the requesting party, the department shall issue a subpoena ordering the alleged father . . . to submit to blood testing." Based on testimony from several witnesses as to when Anna moved out of Charles' home, Anna's Rhode Island affidavit of paternity, and her testimony at the hearing, the ALJ determined that there was a reasonable probability that the parties engaged in sexual relations during the relevant time period.

¶14 The ALJ explained that Charles was not entitled to Anna's medical records for two reasons. First, the records are confidential and can only be obtained through a district court order or Anna's consent. Second, the only medical information pertinent to the limited issue before the ALJ is the date of birth of the child. The ALJ determines a probable range of dates of conception by subtracting the normal period of gestation, 266 to 294 days, from the birthdate. Based on the date of birth of M.J.S., November, 26, 1995, the ALJ determined that the probable date of conception was between February 13, 1995 and March 26, 1995. The relevant medical information, the birth certificate and the paternity affidavit containing the date of birth, were provided to Charles. Therefore, we determine that the District Court did not abuse its discretion in affirming the decision of the ALJ denying Charles' request for Anna's medical records.

¶15 Moreover, we agree with the decision of the ALJ that the insurance records sought by Charles were not relevant to the question of whether the probability of sexual relations was reasonable. Rather, they dealt with whether Anna disclosed to the insurance company that Charles is the alleged father of M.J.S. We determine that the District Court did not abuse its discretion in affirming the decision of the ALJ denying Charles' discovery requests.

II

¶16 2) Did CSED have subject matter jurisdiction pursuant to § 40-5-232, MCA?

¶17 Section 40-5-232(5), MCA, provides that

> [t]he department shall commence proceedings to establish
> paternity by serving on an alleged father a notice of parental
> responsibility.  The department may not serve the notice unless
> it has:
>     (a) a sworn statement claiming that the alleged father is
> the child's natural father;
>     (b) evidence of the existence of a presumption of
> paternity under 40-6-105; or
>     (c) any other reasonable cause to believe that the alleged
> father is the child's natural father.

Charles asserts that, because Anna's Montana affidavit was excluded by the ALJ, CSED lacked subject matter jurisdiction pursuant to § 40-5-232, MCA. CSED, on the other hand, asserts that since other reasonable cause existed, the lack of Anna's Montana affidavit did not deprive CSED of jurisdiction to bring the paternity action.

¶18  The ALJ excluded Anna's Montana affidavit because it contained many defects and questions regarding its authenticity.  However, the ALJ further determined that Anna's Rhode Island affidavit of paternity and Anna's testimony at the hearing were sufficient to allow the case to proceed.  CSED argues that the ALJ properly relied on the Rhode Island affidavit and Anna's testimony for two reasons.  First, the statute does not require that the affidavit be a Montana affidavit and, second, CSED satisfied the "other reasonable cause to believe" alternative of § 40-5-232(5), MCA.

¶19  We agree with CSED that § 40-5-232(5), MCA, does not require that the statement of paternity be sworn to in Montana. Rather, we conclude that Anna's Rhode Island affidavit of paternity, which alleges Charles is the father, satisfied the requirement of § 40-5-232, MCA, thus allowing the department to commence proceedings.  Thus, we do not reach the issue of whether CSED satisfied the "other reasonable cause to believe" alternative.  We conclude that the ALJ did not abuse her discretion in holding that CSED had jurisdiction to commence the paternity proceedings.  We affirm.

                    /S/  W. WILLIAM LEAPHART

We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER
/S/  WILLIAM E. HUNT, SR.